J-A16033-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDREW R. CARSON | : | |
| | : | |
| Appellant | : | No. 2015 MDA 2018 |

Appeal from the Judgment of Sentence Entered August 1, 2018
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s): CP-38-CR-0001046-2017

BEFORE: LAZARUS, J., MURRAY, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.: **FILED: JULY 24, 2019**

Appellant Andrew R. Carson appeals from the judgment of sentence entered in the Court of Common Pleas of Lebanon County on August 1, 2018, following his non-jury convictions of two counts of driving under the influence of alcohol.[1] We affirm.

The trial court detailed the relevant facts and procedural history as follows:

> Before this [c]ourt is [Appellant's] Consolidated, Post-Sentence Motion. [Appellant] asserts that his Motion in Arrest of Judgment should be granted because the Commonwealth failed to present sufficient evidence at trial to prove beyond a reasonable doubt that [Appellant] was guilty of one count of Driving Under the Influence of Alcohol (75 Pa.C.S. § 3802 §§ B) and one count of Driving Under the Influence of Alcohol (75 Pa.C.S. § 3802 §§ AI). In the alternative, [Appellant] asserts that his Motion for Judgment of Acquittal should be granted because the verdict was against the weight of the evidence as the Commonwealth failed to

_____

[1] 75 Pa.C.S.A. § 3802.

_____

\* Former Justice specially assigned to the Superior Court.

present evidence to establish chain of custody beyond a reasonable doubt. Finally, in the alternative, [Appellant] requests this Court grant his Motion for Judgment of Acquittal for Violation of the Double Jeopardy Clause of the Pennsylvania and United States Constitutions.

## I.    FACTUAL HISTORY

Lebanon County Police Officer Stephanos Goumas testified that on March 9, 2017 at approximately 5:00 p.m., dispatch advised him "that there was –somebody called about an intoxicated person at the good Samaritan Hospital at the ER entrance." (Notes of the Trial Testimony Transcript held January 30, 2018, hereinafter "N.T. 1/20/18," Pages 5-6). Dispatch added that there was somebody who was in his car and talking to Good Samaritan Hospital security. (N.T. 1/30/18, Page 6); (Notes of the Trial Testimony Transcript held May 31, 2018, hereinafter "N.T. 5/31/18," Page 12). Officer Goumas was not on a call and "immediately responded" to that location "probably within a few minutes." (N.T. 5/31/18, Page 12). Upon arrival Officer Goumas made contact with an individual who was outside, but standing next to, the driver's side of a vehicle with the license plate JCX99881[1] and who was speaking with security staff. (NJ. 1/20/18, Pages 6-7). Officer Goumas did not see [Appellant] inside of a vehicle when he arrived. (N.T. 5/31/18, Page 12, 16). The vehicle was stopped in the middle of the "little roadway that leads to the ER entrance." (N.T. 1/20/18, Page 6, 17). Officer Goumas testified that [Appellant] did not attempt to drive while Officer Goumas was present, but the vehicle was running. (N.T. 5/31/18, Page 16).

Officer Goumas testified that his initial observation was that [Appellant] was intoxicated, based off his training and experience, and he did not feel comfortable allowing [Appellant] to leave in such condition. (N.T. 1/20/18, Pages 8-9). [Appellant] denied driving the vehicle. (N.T. 1/20/18, Page 10). Officer Goumas testified that based upon his training and education, [Appellant] had an impaired ability to drive. He stated: "[j]ust the way he was swaying his body. It was also the results of the (field sobriety) tests. And then his admission of consuming alcohol." (N.T. 1/20/18, Page 13); (N.T. 5/31/18, Page 11).

After being placed under arrest Officer Goumas took [Appellant] to the hospital for a blood draw. (N.T. 1/20/18, Page 13). This was within two hours of Officer Goumas being dispatched to the scene. (N.T. 1/20/18, Page 13). Finally, Officer Goumas testified that he witnessed phlebotomist, Natale Camille draw two

vials of [Appellant's] blood. (N.T. 1/20/18, Page 14); (N.T. 5/31/18, Page 17). The Commonwealth then asked the witness, "That blood was then submitted to the lab for results?" (N.T. 1/20/18, Page 14). Defense Counsel objected stating, "Leading, and may very well be outside the officer's personal knowledge as to what happened to the vials." (N.T. 1/20/18, Page 14).

After a discussion between Counsel and the [c]ourt regarding Defense Counsel's objection the Commonwealth attempted to have Sergeant Mike DiPalo called to testify. (N.T 1/20/18, Page 18). The [c]ourt noted that Sergeant DiPalo was not a representative of the hospital. (N.T. 1/20/18, Page 19). The jurist presiding over the trial stated, "So I'm just looking for somebody from the hospital, not somebody outside of the hospital who works for the District Attorney's office, to testify this is what their procedure is. Okay?" (N.T. 1/20/18, Page 20). Defense Counsel objected to continuing the matter because she never stipulated to chain of custody. Defense Counsel opined that the Commonwealth's non-preparedness at trial should not allow it the ability to defer the trial to another day. (N.T. 1/20/18, Pages 20-1). The Court noted Defense Counsel's objection for the record. (N.T. 1/20/18, Page 21). The [c]ourt also noted that the Commonwealth had not yet rested. (N.T. 1/20/18, Page 21). The [c]ourt then granted the Commonwealth's Motion for a Continuance over Defense Counsel's objection. (N.T. 1/20/18, Page 21).

The trial then resumed on May 31, 2018. The Commonwealth recalled Officer Goumas. (N.T. 5/31/18, Page 6). The Commonwealth admitted Exhibit 3, a certification of request for collection of blood for legal alcohol testing. (N.T. 5/31/18, Page 30). Officer Goumas identified his signature on the form showing that he witnessed the phlebotomist prepping, drawing, and sealing the tubes with tamperproof evidence seals after requesting the blood draw at 5:52 p.m. (N.T. 5/31/18, Page 10). Officer Goumas testified on cross that he believed the blood had been drawn at 6:23 p.m. (N.T. 5/31/18, Page 12). Finally, Officer Goumas testified that the two vials were sealed-off with evidence or tamperproof tape and placed in a Styrofoam box, which is also sealed with evidence tape. (N.T. 5/31/18, Page 11).

The Commonwealth then called Robert Sweeney, who worked with Lebanon County Crisis Intervention on the day in question. (N.T. 5/31/18, Page 18). Mr. Sweeney testified that on March 9, 2017 he heard a woman yelling: "Stop him. He is trying to get away." (N.T. 5/31/18, Page 18). The witness was directed outside to a car in front of the hospital where he encountered the

[Appellant] in the driver's seat. (N.T. 5/31/18, Page 19). "He was moving a very slow short distance. She said: He's trying to get away. Stop him. So security and I went out to help stop the car." (N.T. 5/31/18, Page 19). Mr. Sweeney testified that because [Appellant] was driving "[v]ery very slowly" the witness stood in front of the vehicle to look at [Appellant] through the windshield while the security guards came around to the driver's side door to speak with [Appellant]. (N.T. 5/31/18, Pages 19-20). Mr. Sweeney testified that Officer Goumas arrived at the scene stating, "Yes. Very quickly, actually. ... I would say 10/15 minutes." (N.T. 5/31/18, Page 20).

Next, the Commonwealth called Camille Natale, a phlebotomist at the WellSpan Good Samaritan Hospital. (N.T. 5/31/18, Page 23). The Commonwealth proceeded to question Ms. Natale regarding typical procedures for taking blood and testing for the presence of alcohol. (N.T. 5/31/18, Pages 24-28). Ms. Natale testified that all procedures were followed in the handling of [Appellant's] blood sample and that she did prep, draw, and place into storage [Appellant's] blood samples. (N.T. 5/31/18, Page 26-8). On Cross, Ms. Natale stated that she never saw who picked up the blood from secured storage after she had placed it in secured storage. (N.T. 5/31/18, Page 31).

Kimberly Souder was the Commonwealth's fourth witness. Ms. Souder is a forensic scientist II with the Pennsylvania State Police Crime Lab in Harrisburg and has worked there for approximately twenty-six (26) years. (N.T. 5/31/18, Page 32). Ms. Souder then provided testimony regarding the lab's chain of custody procedure for dealing with received evidence. (N.T. 5/31/18, Pages 33-4). Exhibit 7, a copy of the chain of custody report from the laboratory system as it related to [Appellant's] blood, was admitted. (N.T. 5/31/18, Pages 34-5). The parties stipulated that Exhibit 8, the lab report, would show that Ms. Souder tested [Appellant's] blood alcohol kit and concluded using headspace gas chromatography that [Appellant's] blood was 0.157, over/under 0.007 grams' percent of ethyl alcohol in whole blood. (N.T. 5/31/18, Pages 35-6). [Appellant's] blood test results meant that if the Commonwealth could prove beyond a reasonable doubt [Appellant] drove, operated, or was in actual physical control of the movement of a vehicle within two hours after imbibing alcohol that produced such blood test results he was guilty of Driving under influence of alcohol in the "High rate of alcohol" category.[2] Ms. Souder testified that the blood was received in a Styrofoam box that was sealed with a red seal, and that there were two gray stopper tubes of blood inside the

- 4 -

cardboard box. (N.T. 5/31/18, Page 37). Further, Ms. Souder testified that the alcohol blood kits were sealed with red evidence seals and there was no indication of tampering. (N.T. 5/31/18, Page 37). Finally, Ms. Souder testified that she would not have analyzed and/or tested the item if it was opened or there were signs of tampering. (N.T. 5/31/18, Pages 37-8). On Cross, Ms. Souder testified that she did not see the blood arrive at the lab, nor did she receive it at the lab, and finally that she did not see who delivered the blood to the lab. (N.T. 5/31/18, Page 38).

At the conclusion of Ms. Souder's testimony, the Commonwealth rested. (N.T. 5/31/18, Page 39). The Defense then made an oral Motion for Judgment of Acquittal, arguing the Commonwealth has not established a chain of custody and the Commonwealth has not established that the blood was drawn within two hours of [Appellant] operating a motor vehicle. (N.T. 5/31/18, Pages 39, 44).

There was no testimony regarding chain of custody from the time the blood samples were signed out of secured storage at the WellSpan Good Samaritan Hospital on March 16, 2017 at 10:25 a.m. until the blood samples were received by the Pennsylvania State Police Crime lab on March 16, 2017 at 11:35 a.m. (N.T. 5/31/18, Pages 28, 35, 39, and 40). Defense Counsel stated, "we don't know – we have no testimony who actually took it, and how it got there what condition and temperature, et cetera." (N.T. 5/31/18, Page 40). The [c]ourt then clarified the issue for the record:

> Let's be clear for the record: The problem we have here is Millie Gonzalez for some reason was left go from the District Attorney's office. I also want to be very clear for the record that my understanding of why she would have been involved -I did not know this -I don't remember if it was this case or another case -I did not know why she would have been involved. I didn't know how it got from the Good Sam to the State Police lab, okay - but my understanding is that she was the woman tasked with taking it from the hospital to the State Police lab.

(N.T. 5/31/18, Pages 41-2).

> So I have a person who's no longer with the DA's office that has no prior record that has charges against her who picked up the box at 10:25 and dropped it off at 11:35 a.m. on March 16th. Because she's not here she can't verify that that is her signature; she was in fact the one who went there. okay. For what it's worth, I will take

that into consideration when I am rendering my decision in this case.
(N.T. 5/31/18, Page 43).

The [c]ourt determined enough evidence had been submitted by the Commonwealth to allow the case to go to the finder of fact, this [c]ourt. (N.T. 5/31/18, Page 46). Thus, the [c]ourt denied both Motions for Judgment of Acquittal. (N.T. 5/31/18, Page 47).

## II. PROCEDURAL HISTORY

[Appellant] was charged with the following:
Count I: Driving Under the Influence of Alcohol (75 Pa.C.S. § 3802 §§ B) (M)
and
Count II: Driving Under the Influence of Alcohol (75 Pa.C.S. § 3802 §§ AI) (M).

[Appellant] was convicted on both counts after a bench trial that began on January 30, 2018, was [c]ontinued upon Motion of the Commonwealth, and concluded on a second day which occurred on May 31, 2018, before the Honorable Charles T. Jones, Jr. [Appellant] was sentenced for the above offenses on August 1, 2018. [Appellant] was sentenced to pay the costs of prosecution, pay a fine of $500.00, and be placed on Intermediate Punishment for a period of six (6) months; the first two (2) weeks to be served on house arrest with electronic monitoring at [Appellant's] expense, and the remainder to be served on Probation under the supervision of Lebanon County Probation Services Department. Four special conditions attached to [Appellant's] sentence: (1) compliance with the mandates of Act 24 of 2003; (2) completion of a drug and alcohol evaluation and successful completion of any recommendations; (3) attendance and completion of the Alcohol Safe Driving Program of Lebanon County; and (4) no operation of a motor vehicle until [Appellant's] license is returned by PENNDOT. During sentencing the [c]ourt noted that Count II merged with Count I.

[Appellant] timely filed his Consolidated, Post-Sentence Motion on August 2, 2018. A Post-Sentence Scheduling Order was thereafter issued on August 24, 2018, and the Commonwealth and [Appellant] both timely filed their Briefs. The matter is now ripe for disposition.

[1] On Cross, Counsel for [Appellant] asked Officer Goumas if the license plate was JTX9988. Officer Goumas responded, "That sounds actually correct. I believe it was [Appellant's] vehicle So it would be registered to Mr. Carson." (N.T. 5/31/18, Page 13).

[2] 75 Pa.C.S.A. § 3892(b).

Trial Court Opinion, 11/30/18, at 1-9 (unnecessary boldface type omitted).

On November 30, 2018, the trial court denied Appellant's post sentence motions. On December 5, 2018, Appellant filed both a notice of appeal and a concise statement of matters complained of on appeal wherein he presented two issues. On December 11, 2018, the trial court filed an Order wherein it stated, *inter alia*, the following:

> 2. the [c]ourt takes notice that Appellant filed a Concise Statement of Errors Complained of on Appeal on December 5, 2o18, concurrently with his Notice of Appeal. The instant Order is meant to allow Appellant the opportunity to file a supplemental Concise Statement of Errors, if he so desires, no later than twenty-one (21) days from the date of entry of this Order upon the docket.

Trial Court Order, filed 12/11/18, at ¶ 2.

On December 31, 2018, Appellant filed an amended concise statement of matters complained of on appeal. Therein, he raised the following three issues he presents for this Court's review in the Statement of Questions Involved portion of his appellate brief:

> A. Did the trial court err as a matter of law in finding that the Commonwealth did not violate the Double Jeopardy clause of the United States and Pennsylvania Constitutions when Appellant was subjected to Trial for the same offense on two separate dates?

B. Did the trial court err[] as a matter of law in its finding that the Commonwealth proved Count 1 DUI, high rate of alcohol (.10<.16) beyond a reasonable doubt?

C. Did the trial court [sic] in failing to dismiss the charges against Appellant when the Commonwealth was not prepared to proceed to Trial on the date Trial was called when the first Witness was sworn and testimony presented?

Brief for Appellant at 4.

Appellant initially argues that jeopardy attached on January 30, 2018, at which time the Commonwealth began questioning Officer Gumas and it became apparent the Commonwealth had no witnesses to establish the chain of custody of the blood sample. Appellant reasons that although he had not been subjected to a final judgment on the merits when the trial court continued the trial until May of 2018, he was subjected twice to trial for the same charges, because the trial court's action gave the Commonwealth "a second bite at the apple." Appellant concludes the trial court erred when it did not dismiss the charges in light of the Commonwealth's failure to proceed in January of 2018. Brief for Appellant at 8, 10.

This Court recently reiterated our well-settled standard of review of challenges on double jeopardy grounds:

> An appeal based on double jeopardy grounds presents a question of constitutional law. *Commonwealth v. Vargas*, 947 A.2d 777, 780 (Pa. Super. 2008) (citations omitted). As with all questions of pure law, our standard of review is *de novo* and our scope of review is plenary. *Id.* We must also consider the following:

> The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Article 1, § 10 of the Pennsylvania Constitution protect a defendant from repeated criminal prosecutions for the same offense. Ordinarily, the law permits retrial when the defendant successfully moves for mistrial. . . .

*Commonwealth v. Adams*, 177 A.3d 359, 371 (Pa.Super. 2017).

*Commonwealth v. Byrd*, 2019 WL 1892159 at *1-2 (Pa.Super. filed Apr. 29, 2019) (citation omitted). "Furthermore, the Double Jeopardy Clause [ ] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Commonwealth v. Farrow*, 168 A.3d 207, 214–15 (Pa.Super. 2017) (citation omitted).

At the outset, we note that the basis of Appellant's objection to continuing the instant matter on January 30, 2018, was the Commonwealth's alleged failure to be prepared to proceed with regard to chain of custody evidence; at no time did Appellant object to continuing the matter on double jeopardy grounds. It is axiomatic that:

> In order to preserve a claim for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court, or the claim is waived. On appeal, the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected. The principal rationale underlying the waiver rule is that when an error is pointed out to the trial court, the court then has an opportunity to correct the error. By specifically objecting to any obvious error, the trial court can quickly and easily correct the problem and prevent the need for a new trial. Additionally, the appellate court should not be

required to waste judicial resources correcting a problem that the trial court could have easily corrected if it had been given the opportunity to avoid the necessity of granting a new trial.

*Commonwealth v. Russell*, 2019 WL 1967823 at *6 (Pa.Super. filed May 3, 2019) (citations omitted).

Appellant did not object before the trial court on the basis of any double jeopardy concerns either at the conclusion of the first day of trial on January 30, 2018, or at the outset of the second day of trial which commenced on May 31, 2018. Instead, he presented this claim in his Post-Sentence Motions filed on August 2, 2018. *See* Defendant's Post-Sentence Motions Pursuant to Pa.R.Crim.P. 720, at 4-7 (unnumbered).

In *Commonwealth v. Splain*, 364 A.2d 384 (Pa.Super. 1976), this Court held that a defendant normally must assert a double jeopardy claim in a timely manner, and he may not wait until after the Commonwealth has presented its evidence before doing so. *Id.* at 387; *see also Commonwealth v. Block*, 469 A.2d 650, 652 n. 4 (Pa.Super. 1983) ("While it is true that the lack of a *specific* objection will not constitute a waiver of a particular basis for relief under double jeopardy, ... it has also been held that a defendant cannot sit back and put the Commonwealth to the expense and time of presenting its evidence then later object to the proceeding on double jeopardy grounds.") (citations omitted; emphasis in original). In light of the foregoing, Appellant's double jeopardy challenge is patently untimely and, as such, we find Appellant's claim waived for failure to raise it in a timely manner. *See*

*Commonwealth v. Sauers*, 159 A.3d 1, 9 (Pa.Super. 2017) (stating that the failure to offer a timely and specific objection results in waiver of the claim), appeal denied, 642 Pa. 605, 170 A.3d 1057 (2017).

Notwithstanding, Appellant's assertion that his criminal trial was held in violation of principles of double jeopardy is without substantive merit. Appellant was not subjected to a repeated criminal prosecution for the same offenses following a conviction, for the trial court stated on January 30, 2018, that the Commonwealth "has not rested," and it made no final judgment as to Appellant's guilt or innocence. Indeed, the trial court specifically reserved judgment until May 31, 2018, and did not resolve any element of any of the charged offenses until that time.

To the contrary, in response to Appellant's objection as leading and, perhaps, outside of his personal knowledge, to the questioning of Officer Goumas as to whether the vials of blood were submitted to the lab for results, the trial court stated, "Do we have everybody here that we can go through every step of the way? I would like that. If that is the objection, we're going to hear every single thing." N.T. Trial 1/30/18, at 14. Simply put, Appellant had one trial which took place on two days, and the continuance was necessitated by the Appellant's objection. Thus, the trial court properly found that double jeopardy does not apply to the instant matter. Trial Court Opinion, filed 11/30/18, at 20-21.

Next, Appellant argues the trial court erred in finding him guilty of DUI, high rate of alcohol beyond a reasonable doubt. This claim presents a challenge to the sufficiency of the evidence. When examining a challenge to the sufficiency of the evidence, our standard of review is as follows:

> The determination of whether sufficient evidence exists to support the verdict is a question of law; accordingly, our standard of review is *de novo* and our scope of review is plenary. In assessing [a] sufficiency challenge, we must determine whether viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth], there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. … [T]he finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Edwards*, 177 A.3d 963, 969-970 (Pa.Super. 2018) (quotation marks and citations omitted). Moreover, "[t]he Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011) (citation omitted), *appeal denied*, 613 Pa. 642, 32 A.3d 1275 (2011).

Appellant herein was convicted of DUI under Sections 3802(a)(1) and (b) which provide:

> **(a) General impairment.—**
> (1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

- 12 -

\* \* \*

> **(b) High rate of alcohol.**—An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.10% but less than 0.16% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. §§ 3802(a)(1) and (b).

First, we observe that Appellant challenges only his conviction pursuant to Subsection (b). "[T]o sustain a conviction under Subsection 3802(b), the Commonwealth must prove: (1) Appellant was driving, operating, or in actual physical control of the movement of a vehicle, and (2) Appellant's BAC was is [sic] at least 0.10% but less than 0.16% within two hours of driving, operating, or being in control of the vehicle. *See* 75 Pa.C.S.A. § 3802(b)." ***Commonwealth v. Haight***, 50 A.3d 137, 141 (Pa.Super. 2012).

With respect to challenges to the sufficiency of the evidence generally, this Court repeatedly has required that "[i]n order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." ***Commonwealth v. Freeman***, 128 A.3d 1231, 1248 (Pa.Super. 2015) (internal citations omitted). This Court then may analyze the element or elements on appeal. ***Commonwealth v. Tyack***, 128 A.3d 254, 260 (Pa.Super. 2015).

In ***Tyack***, the appellant's Rule 1925(b) statement declared, in boilerplate fashion, that the evidence was insufficient to support his conviction of possession of an electric or electronic incapacitation device by a prohibited person because the Commonwealth had failed to prove he had been ineligible to possess the device. This Court concluded that the appellant had waived his sufficiency claim on appeal because the Rule 1925(b) statement had failed to specify the element or elements upon which the evidence was insufficient to support Appellant's conviction, thus, it had failed to identify sufficiently the error that he intended to challenge on appeal. ***See also*** Pa.R.A.P. 1925(b)(4)(ii) & (vii) (providing, respectively, that "[t]he Statement shall concisely identify each ruling or error that the appellant intends to challenge **with sufficient detail to identify all pertinent issues for the judge**[,]" and that "[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph [ ] are waived." (emphasis added)).

Herein, Appellant's Concise Statement of Matters Complained of on Appeal Statement Pursuant to Pa.R.A.P. 1925(b) raised only a generic challenge and did not specify precisely which elements of Count 1, 75 Pa.C.S.A. § 3802(b), he intended to argue the Commonwealth failed to prove on appeal. Therefore, we find this claim waived for lack of sufficient specificity in Appellant's concise statement. ***Commonwealth v. Harris***, 2019 WL 324634, at *2–3 (Pa.Super. Jan. 25, 2019).

However, even if Appellant had not waived this challenge based upon his deficient Rule 1925(b) statement, he still would not be entitled to relief. As this Court has observed, when considering a sufficiency claim, we evaluate the entire record and consider all evidence:

.... When examining the evidence in the trial record in a light most favorable to the Commonwealth, we do not make new factual determinations based on the trial evidence introduced; rather, we accept the evidence of record, and all reasonable inferences drawn therefrom on which the factfinder could properly have based its verdict, as factually true.

*In Interest of J.B.,* 189 A.3d 415 (Pa. 2018) (citation omitted).

When analyzing Appellant's challenge to the sufficiency of the evidence as it pertained to Count 1, or 75 Pa.C.S.A. § 3802(b), the trial court reasoned as follows:

[Appellant] argues that only one witness (Mr. Sweeney) testified that [Appellant] operated a motor vehicle and that witness had no recollection of when he saw [Appellant] operating the vehicle. Because Officer Goumas testified that he arrived around 5:00 p.m. or shortly thereafter and the blood drawl [sic] occurred at 6:26 p.m., [Appellant] argues there is a thirty-four (34) minute gap in time. [Appellant's] Brief in Support of His Post-Sentence Motions, unpaginated. [Appellant] argues that the Commonwealth has the burden of proving guilt beyond a reasonable doubt, and the Commonwealth failed to meet this burden because a reasonable doubt exists as to whether [Appellant's] blood was taken within two (2) hours of [Appellant] being in control of a motor vehicle. Id.

The Commonwealth responds with the following: Mr. Sweeney testified that he witnessed [Appellant] driving. (N.T. 5/31/18, Page 19). Further, Mr. Sweeney testified that Officer Goumas arrived on the scene "very quickly" after Sweeney witnessed this incident. (N.T. 5/31/18, Page 20). Finally, the Commonwealth mentions that [Appellant] did not drink any alcohol between the time of the incident and the time Officer Goumas arrived. (N.T. 5/31/18, Page 20-21). Commonwealth's

Brief in Opposition to Defendant's Post -Sentence Motions, Page 10.

Upon review of the transcript the [c]ourt finds that it discussed this issue when ruling upon [Appellant's] Oral Motion for Judgment of Acquittal during the second day of trial on May 31, 2018 as it related to the two-hour period prior to [Appellant's] blood being drawn at 6:26 p.m. by phlebotomist Camille Natale.

But I'm kind of going on that when he was moving, how soon he showed up after that time period. We are talking about from the emergency room entrance driveway to somewhere else in the hospital. Okay? We do have a date and time of this specimen taken at 182600 (sic) hours. So if we're going from 1700 hours to 1826, that is an hour and 26 minutes. I have to decide what very short time period within 5 to 15 minutes or 10 to 15 minutes, what time period. You said very quickly with dispatch time and arrival time. So I'm with you.

(N.T. 5/31/18, Pages 45-6).

So I have to decide whether it took him 34 minutes to get there after he was notified after the guy drove and that kind of thing. We can all agree it is within 34 minutes.

(N.T. 5/31/18, Page 47).

He is clearly driving the car at that point. The moment they get him out of the car, Officer Goumas was there pretty quickly. They are at the hospital. You don't get much closer to go to have that blood alcohol taken and that being right at the hospital. So while I'm willing to believe it could have been shorter, it could have been longer than 10 or 15 minutes, It could have been shorter than 10 or 15 minutes, I don't think we're wrapping around to 34 minutes from there.

(N.T. 5/31/18, Pages 51-2).

\*\*\*

The [c]ourt additionally found that Officer Goumas testified that when he arrived on scene, at or shortly after 5:00 p.m., [Appellant] was standing outside of the vehicle next to the driver's side with the door open and the car running. (N.T. 5/31/18, Page 16). Although [Appellant] did not attempt to leave the scene once Officer Goumas arrived the [c]ourt again finds he was at that time in actual, physical control of a motor vehicle at or shortly after 5:00 p.m. Thus, no reasonable doubt existed to find [Appellant's] blood was not drawn within two hours of him driving, operating,

- 16 -

or being in actual physical control of a motor vehicle as required by statute. The [c]ourt finds that viewing the facts in the light most favorable to the Commonwealth, supported at trial by the testimony and evidence presented, that [Appellant's] blood samples were drawn within two hours of him driving, operating, or being in actual physical control of the movement of the vehicle, and the Commonwealth submitted sufficient evidence to support the verdict. Thus, [Appellant's] Motion for Arrest of Judgment is respectfully denied.

Trial Court Opinion, filed 11/30/18, at 11-14 (unnecessary boldface type omitted).

Upon our review of the record, we find no error in the trial court's thorough analysis and, thus, would affirm the trial court's disposition of Appellant's second issue.

In his third claim, Appellant maintains the trial court should have dismissed the charges against him in light of the Commonwealth's lack of preparedness to proceed on January 30, 2018, despite the fact that its first witness had been sworn and testified. Appellant devotes less than two pages of argument to this issue in his appellate brief wherein he admits that this claim is closely related to that which he presented in support of his double jeopardy challenge. In fact, he essentially reiterates in abbreviated fashion the points he presented in support of thereof. Brief for Appellant at 19-20.

Prior to reaching the merits of this issue, we again must address whether Appellant has preserved it for our review. As stated previously, to preserve a claim for appellate review, a party must make a timely and specific objection at the appropriate state of the proceedings in an effort to allow the

trial court to correct any error. *See Russell*, *supra*. While Appellant did object to allowing a continuation of the proceedings so that the Commonwealth may obtain additional testimony pertaining to chain of custody, at no point did Appellant make a motion to dismiss all charges due to the Commonwealth's alleged lack of preparedness in January of 2018. Because Appellant improperly is attempting to raise a new theory of relief for the first time on appeal, we conclude Appellant has waived this final claim. *See* Pa.R.A.P. 302(a); *Phillips, supra.*

Notwithstanding, to the extent Appellant's objection on January 30, 2018, may be deemed sufficient to have preserved this issue for appellate review, we would find this claim lacks merit. A review of the record reveals the Commonwealth sought to present the testimony of Sergeant Mike Depalo as to the technical procedure for handling blood draws. N.T., 1/30/18, at 17-18. It was the trial court who explained that as per court procedure it wanted to hear testimony from "somebody from the hospital" pertaining to the procedure, at which time Appellant objected. *Id*. at 19-20. As stated previously, the trial court specifically stressed on January 30, 2018, that the Commonwealth "has not rested," made no final judgment as to Appellant's guilt or innocence on either of the pending charges, and reserved judgment until May 31, 2018, in light of Appellant's objection.

For the foregoing reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/24/2019